IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RICHARD and SUSAN PEAVLEY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACT. NO.  1:11-cv-368-WKW |
| ) | (WO) |
| CHASE HOME FINANCE, ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this civil action, *pro se* plaintiffs Richard and Susan Peavley ("the Peavleys") allege that Chase Home Finance ("Chase") discriminated against them in violation of the Fair Housing Act, 42 U.S.C. § 3605, when Chase failed to approve them for a HUD 203(k) rehabilitation loan because they are disabled.[1]  Specifically, the Peavleys complain that Ethan Allen, a Chase employee, told them that they should not have received a mortgage because they were disabled and they needed to live in public housing.  As a result of Chase's failure to approve them for a HUD 203(k) rehabilitation loan, the Peavleys allege that they were forced to file bankruptcy to save their home.[2]  The court has jurisdiction of these claims

---

[1] Pursuant to 12 U.S.C. § 1709(k), the Secretary of the United States Department of Housing and Urban Development is authorized to insure mortgage loans to assist in the rehabilitation of single family homes.

[2] The plaintiffs' pleadings are not a model of clarity.

1

pursuant to its federal question jurisdiction under 28 U.S.C. § 1331.

This case is now pending before the court on the defendant's motion for summary judgment. (Doc. # 32). The plaintiffs have responded to the motion for summary judgment. After carefully considering the motion, the plaintiffs' responses to the motion and the supporting and opposing evidentiary materials, the court concludes that the motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][3] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted) (footnote added); FED.R.CIV.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant

---

[3] Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the movant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must be support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the movant's properly supported motion for summary judgment, a party is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

(1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a

5

*pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiffs' *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

### III. FACTS

Construed in the light most favorable to the non-moving plaintiffs, the following facts are undisputed.[4] On November 30, 2007, Richard and Susan Peavley executed a promissory note and mortgage on their primary residence at in Dothan, Alabama. (Doc. # 32, Exs. A & B). Using the residence as collateral, the Peavleys borrowed $77,750.00 from Wachovia Mortgage Corporation ("Wachovia"). (*Id.*) On May 1, 2008, Wachovia assigned the mortgage to Mortgage Electronic Registration Systems, Inc., which subsequently assigned the mortgage to Chase Home Finance, Inc., on October 5, 2009. (Doc. # 32, Ex. C).

Sometime in 2008, the Peavleys discovered that Susan Peavley would need a

---

[4] At this stage of the proceedings, this court takes the facts alleged by the Peavleys as true and construes them in the light most favorable to them. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," ... and 'resolve all reasonable doubts about the facts in favor of the non-movant.' ... Moreover, the court must avoid weighing conflicting evidence or making credibility determinations....").

6

wheelchair due to her medical condition.[5] (Doc. # 35 at 2). They also sought to replace their roof and air conditioning. (*Id*.) Mrs. Peavley found information on the Internet about a HUD 203(k) rehabilitation loan. (*Id*.) When Mrs. Peavley called HUD, she was directed to call her mortgage company. Whomever Mrs. Peavley spoke to at Chase informed her that they didn't know about a 203(k) rehabilitation loan.[6] Mrs. Peavley then checked the HUD website which listed Chase as a lender that originates 203(k) rehabilitation loans.[7] Chase's website indicates that it offers Home Modeling and Repair Loans.[8]

When Mrs. Peavley next called Chase, she spoke with Eugene Allen.[9] According to Mrs. Peavley, Mr. Allen told her that "he didn't see how [she and her husband] got a home loan from Wachovia in the first place. And if [they] need that much repairs to the home that [they] need to let the house go and move into public housing." (Doc. # 35 at 2). Mrs. Peavley complained to Chase about Mr. Allen, and she subsequently spoke with Anna

---

[5] The record does not reveal the nature of Mrs. Peavley's medical condition necessitating a wheelchair.

[6] Mrs. Peavley does not identify the Chase employee to whom she spoke.

[7] In the material submitted by the Peavleys, a representative from Chase indicates that the HUD website is incorrect. *See* Doc. # 32-14 at 7. In addition, while the material submitted by the Peavleys list JP Morgan Chase Bank and Citizens Home Loans of America as approved HUD lenders, there is no evidence that Chase Home Finance originates 203(k) rehabilitation loans in Alabama. The undisputed evidence is to the contrary.

[8] There is no evidence that the Home Modeling and Home Repair loans advertised on Chase's website are HUD rehabilitation loans.

[9] There is some dispute as to whether Mr. Allen was a loan officer or a Senior Operations Associate. This dispute is immaterial to the resolution of the defendant's motion for summary judgment.

Gustafson.[10] In January 2009, Gustafson sent Mrs. Peavley an email in which she informed Mrs. Peavley that she works for Chase "on the origination side so [she] do[es] not fully understand the in's and out's of HUD, Hope for Homeowners. . etc." (Doc. # 35-1 at 39.) Gustafson informed Mrs. Peavley that she could not find any information from HUD and that she felt that she was at "a dead end." (*Id.*) It is undisputed that as Chase has not offered any 230(k) rehabilitation refinancing to any individual in Dothan, Alabama, during the time period at issue.

During this process of attempting to obtain the 203(k) rehabilitation loan that was advertised on the HUD website, in October 2008, the Peavleys did not pay their mortgage payment. In November 2008, Chase notified the Peavleys that they were delinquent on their mortgage. (Doc. # 32, Ex. D). In December 2008, Chase notified the Peavleys that they were in default.[11] (Doc. # 32, Ex. E).

On February 20, 2009, Chase conditionally approved the Peavleys for a loan modification. (Doc. # 32, Ex. F). The Peavleys did not accept the modification loan offered by Chase. They subsequently filed bankruptcy to "save" their home.

## IV. DISCUSSION

The plaintiffs allege that Chase discriminated against them based on their disabilities

---

[10] Ms. Gustafson was an Escalation Manager for Chase, and handled complaints raised during the loan origination process; she was not involved in loan modifications.

[11] The Peavleys subsequently did not pay their November 2008, December 2008, January 2009, February 2009, March 2009, April 2009, May 2009 and June 2009 mortgage payments.

in violation of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act which is codified at 42 U.S.C. § 3605.[12]  Section 3605 provides, in pertinent part, as follows:

> (a)  . . . It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms of conditions of such a transaction, because of . . . handicap . . .
>
> (b)  . . . As used in this section, the term, "residential real estate-related transaction" means . . .
>
>     (1)  The making or purchasing of loans or providing other financial assistance --
>         (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; . . .

42 U.S.C. § 3605.

In this housing discrimination case, the court applies the legal framework developed in other discrimination cases. *See Sec., United States Dep't of Housing & Urban Dev. on Behalf of Herron v. Blackwell*, 908 F.2d 864, 870 (11th Cir. 1990).  *See also Steed v. Everhome Mortg. Co.*, 2012 WL 2849482, *3 (11th Cir. 2012) (No. 11-13100); *Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. Appx. 935, 938 (11th Cir. 2011) (No. 10-13286).

> We use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 76 L.Ed.2d 207

---

[12] In their complaint, the plaintiffs allege "discriminatory financing," and assert that they are proceeding under "Section 804c, 805, 804f3b of title VIII of the Civil Rights Act of 1968 as amended by the fair housing Act of 1988."  *See* Compl., Doc. # 1 at 6, ¶ 3 & 7.  The plaintiffs allege that Chase failed to approve them for a HUD 203(k) rehabilitation loan because they are disabled.  Because the plaintiffs are alleging that Chase discriminated against them in the context of financing of residential housing, section 3605 is the appropriate vehicle under which to proceed.  *See Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1554, n.27 (5th Cir. 1996) ("§ 3605 is the vehicle for discrimination claims involving the financing of residential housing" citing *Mackey v. Nationwide Ins. Companies*, 724 F.2d 419, 423 (4th Cir. 1984)).

(1981), to evaluate claims based on circumstantial evidence of discrimination under the FHA. *Sec'y, U.S. Dep't of Hous. & Urban Dev, v. Blackwell*, 908 F.2d 864-870-71 (11th Cir. 1990)

*Steed v.EverHome Mortg. Co.*, 308 Fed. Appx. 364, 368 (11th Cir. 2009) (No. 08-13476);

*Boykin v. Bank of Am. Corp.*, 162 Fed. Appx. 837, 838 (11th Cir. 2005) (No. 05-13494).

Consequently, the plaintiffs bear the ultimate burden of proving that the defendant intentionally discriminated against them. *Burdine*, 450 U.S. at 253. To defeat Chase's motion for summary judgment, the plaintiffs must first establish a prima facie case of disability discrimination by a preponderance of the evidence. If they establish a prima facie case, "the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason' for its action." *Blackwell*, 908 F.2d at 870. "[I]f the defendant satisfies this burden, the plaintiff has the opportunity to prove by a preponderance that the legitimate reasons asserted by the defendant are in fact mere pretext." *Id*.

**1. Direct Evidence of Discrimination.** Under the law of this circuit, a plaintiff who presents direct evidence of discrimination is not required to rely on the *McDonnell Douglas* presumption to establish a prima facie case. *See generally Miles v. M.N.C. Corp.*, 750 F.2d 867, 875 (11th Cir. 1985); *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 774 (11th Cir. 1982). Direct evidence of discrimination "must indicate that the complained-of . . . decision was *motivated* by the decision-maker's [discriminatory animus]. As a result, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [disability]" will constitute direct evidence of discrimination." *Damon v. Fleming*

*Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358-59 (11th Cir. 1999).  The Eleventh Circuit has severely limited the type of language constituting direct evidence of discrimination. *See, e.g.*, *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 962 (11th Cir. 1997); *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393-94 n.7 (11th Cir. 1997); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990).  This Circuit holds that a plaintiff presents direct evidence of discrimination where "actions or statements . . . reflect a discriminatory or retaliatory attitude correlating to the discrimination . . . complained of . . . ." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641-42 (11th Cir. 1998); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997).

   Liberally construing the plaintiffs' complaint, as the court is required to do, the Peavleys contend there is direct evidence of intentional discrimination.  Mrs. Peavley points to a single statement by Eugene Allen, a Chase employee, who said "he didn't see how husband and I got home loan from Wachovia [Bank] in the first place.  And if we need that much repairs to the home that we need to let the house go and move into public housing we could save money."  (Doc. # 35 at 2).  Even assuming that Allen made the statement, it is not direct evidence of discrimination because the evidence does not suggest that the statement was made in connection with Chase's assessment of the Peavleys' refinancing loan application or made contemporaneously with Chase's decision regarding a 203(k) rehabilitation loan.  In her affidavit, Mrs. Peavley acknowledges that the statement was made during a telephone call in which she was inquiring into the availability of a HUD 203(k)

rehabilitation loan. *Id*. "And they said they would check into it for me, and they needed to take all my info like I was doing the loan all over again which I gave them the info of our income and our disability history and that's when" Allen made the comment. *Id*. Moreover, it is clear that, at the time the statement was allegedly made, the Peavleys had not applied for the rehabilitation loan; they were simply seeking information.

> "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [disability] . . . constitute direct evidence of discrimination." [*Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1105 (11th Cir. 2001)] (citation and internal marks omitted). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Id.* (citation and internal marks omitted).

*Riley v. Birmingham Bd. of Educ*. 154 Fed. Appx. 114, 116 (11th Cir. 2005) (No. 05-10171).

Finally, Mrs. Peavley acknowledged that after Mr. Allen upset her, she complained and Chase "gave" them someone else with whom to work. *See* Doc. # 35 at 2. Consequently, any nexus between Allen's comment and Chase's handling of their refinancing loan is, at best, speculative. The court concludes that the Peavleys have not produced direct evidence of disability discrimination related to their claims under the Fair Housing Act. Because the Peavleys have not presented direct evidence or statistical evidence of discrimination,[13] the court proceeds to evaluate their circumstantial evidence of disability discrimination under the *McDonnell Douglas* test.

---

[13]A prima facie case of discrimination by one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell-Douglas, supra*; or (3) presenting statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). The Peavleys have not presented any statistical evidence to support a claim of intentional discrimination.

**2. Circumstantial Evidence of Discrimination**.  Because direct evidence of discrimination can be difficult to produce, the Supreme Court in *McDonnell Douglas* created a framework for analyzing a plaintiff's circumstantial evidence of discrimination. *See Nix*, 738 F.2d at 1184 (noting that the *McDonnell Douglas* framework is a valuable tool for analyzing disparate treatment cases).

> In the credit discrimination context, a plaintiff can establish a prima facie case of discrimination by offering evidence showing:  (1) that the plaintiff is a member of a protected case; (2) that the plaintiff applied for and was qualified for a loan from the defendant; (3) that the loan was rejected despite the plaintiff's qualifications; and (4) that the defendant continued to approve loans for applicants outside the plaintiff's protected class with similar qualifications. . . . In "the credit discrimination context, the Plaintiff must present evidence that [she] was 'similarly situated in all relevant aspects' to the non-minority applicants who received loans from [the lender].  In other words, a comparator's credit qualifications and loan details must be 'nearly identical' to the Plaintiff's in order to prevent this court from second guessing the bank's business decision and confusing apples with oranges." *Cooley v. Sterling Bank*, 280 F. Supp. 2d 1331, 1340 (M.D. Ala. 2003) (quotations omitted), *aff'd* No. 03-14727, 116 Fed. Appx. 242 (11th Cir. July 16, 2004).

*Boykin*, 162 Fed. Appx. at 839.

It is undisputed that the plaintiffs are disabled and that they did not receive a HUD 203(k) rehabilitation loan.  While the parties disagree about why the mortgage loan modification did not occur, the court need not reach this issue because the plaintiffs fail to demonstrate that other non-disabled applicants with similar qualifications as the Peavleys received from Chase HUD 203(k) rehabilitation loans.  Although the Peavleys allege that they were discriminated against based upon their disability, they offer no *facts* from which the court could conclude that Chase denied them a 203(k) rehabilitation loan because they

are disabled. Their unsubstantiated opinion that improper discriminatory bias motivated Chase is not an appropriate proxy for evidence. After careful review, the court concludes that the Peavleys' evidentiary submission does not create a genuine dispute of material fact about whether they were similarly situated to any other comparator. The undisputed evidence before the court demonstrates that Chase made *no* 203(k) rehabilitation loans in Alabama, notwithstanding the HUD website that indicated that financing through Chase was available. Even if the evidence to which the Peavleys point was admissible, that evidence that does not demonstrate that Chase made any 203(k) rehabilitation loans to any other applicant in Alabama.[14]

More importantly, however, the plaintiffs fail to present sufficient evidence to permit an inference of discrimination. *See Burdine*, 450 U.S. at 253-54. While the Peavleys asserts that Chase's denial of a HUD 203(k) rehabilitation loan was improperly motivated by their disability status, they offer nothing other than their beliefs that disability played a role in the refinancing decision. To survive the motion for summary judgment, the Peavleys must present evidence creating a genuine dispute of material fact. They cannot rely on their own unsubstantiated opinion that the decision was somehow motivated by an improper motive. "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary

---

[14] In opposition to summary judgment, the Peavleys filed their affidavits and a number of documents from the Internet. For example, the plaintiffs have submitted articles from the HUD website, wikipedia, and a wordpress blog by Mario Kenny. *See* Doc. # 35, Attachments. This hearsay evidence is simply inconsistent with the requirements of FED. R. CIV. P. 56(e). Thus, the Peavleys' reliance on this inadmissible hearsay evidence does not create a factual issue regarding Chase's actions in this case.

judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). *See e.g.*, *Carter*, 132 F.3d at 642 (conclusory allegations without specific supporting facts have no probative value); *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."). The plaintiffs have simply failed to come forward with any evidence that they was treated differently because of their disabilities or that Chase's financing decisions and subsequent failure to offer them a 203(k) rehabilitation loan was based on improper motives.

> "[A] pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Bare and self-serving allegations are inadequate to carry the plaintiff's burden on summary judgment. *Stewart v. Booker T. Washington Ins.,* 232 F.3d 844, 851 (11th Cir. 2000).

*Shuler v. Bd. of Trustees of the Univ. of Ala.*, 2012 WL 2533524, *3 (11th Cir. 2012) (No. 11-11264).

Consequently, the court concludes that the Peavleys have failed to demonstrate that they were similarly situated to other non-disabled persons who were treated differently than they were with respect to a HUD 203(k) rehabilitation loan. Thus, the court concludes that the plaintiffs have failed to establish a prima facie case of discrimination under the Fair Housing Act, and that the defendant's motion for summary judgment is due to be granted.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the

15

defendant's motion for summary judgment be granted and that this case be dismissed with prejudice. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **September 14, 2012.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 31st day of August, 2012.

                                 /s/Charles S. Coody
                                 CHARLES S. COODY
                                 UNITED STATES MAGISTRATE JUDGE